AMBRO, Circuit Judge,
concurring.
Judge Van Antwerpen has written a superlative opinion both in content and tone. I join wholeheartedly but for one issue- *269 how we determine the standard of review-that does not affect the outcome. Indeed, our respective standards of review arrive essentially at the same place though by different paths.
My colleagues conclude that the question of whether waste “may present an imminent and substantial endangerment to health or the environment” under the Resource Conservation and Recovery Act (“RCRA”) § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), is a question of fact. To me, it is not. Instead, I believe it is a mixed question of fact and law. Whether an issue is of fact, or of fact and law, is important because it generally determines the applicable standard of review. See A & H Sportswear, Inc. v. Victoria’s Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir.2000) (a district court’s factual determinations are reviewed for clear error); In re Cellnet Data Sys. Inc., 327 F.3d 242, 244 (3d Cir.2003) (“We review ... mixed questions of law and fact under a mixed standard, affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court’s interpretation and application of those facts to legal precepts.”).
My colleagues’ reason for concluding that imminent and substantial endangerment is factual is that three “[o]ther courts of appeals consider it a question of fact.” See Parker v. Scrap Metal Processors, Inc., 386 F.3d 993 (11th Cir.2004); Cox v. City of Dallas, 256 F.3d 281 (5th Cir.2001); Dague v. City of Burlington, 935 F.2d 1343 (2d Cir.1991), rev’d on other grounds, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). However, none of these decisions explicitly states that the determination of imminent and substantial endangerment is one of fact.[7]
The Supreme Court has written that “we [do not] yet know of any ... rule or principle that will unerringly distinguish a factual finding from a legal conclusion.” Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). However, a practical test I propose for determining whether a question is of fact, of law, or of both fact and law, is as follows. A question of fact can be answered solely by determining the facts of a case (without any need to know the law relevant to the case). A question of law can be answered solely by determining what relevant law means (without any need to determine the facts of a case). A mixed question of fact and law can only be answered by both determining the facts of a case and determining what the relevant law means.
For example, imagine that a man is appealing his conviction under a law that states “it is a crime to be tall.” What kind of question is: “Was the trial court correct to find the man ‘tall’?” Can we answer it solely by determining the facts of the case? No, because even if we know the fact that the man is five feet ten inches, we do not *270 know if he is “tall” in the sense that Congress intended the word “tall” to mean. Can we answer it solely by determining what the relevant law means without knowing the man’s height? No, because even if we know that the statute defines “tall” as “six feet or taller,” we do not know how tall the man is. Thus, we have a mixed question of fact and law. Once we know the facts of the case (that the man is five feet ten inches tall), and what the relevant law means (it is a crime to be six feet tall or taller), we can answer “no” to the question “Was the trial court correct to find the man ‘tall’?”
Applying the test to this case, an example of a question of fact (requiring evidence, experts, studies, etc.) is the following: “What are the dangers caused by Honeywell’s chromium?” An example of a finding of fact is: “Honeywell’s chromium caused a 10% chance that between 10,000 and 20,000 mollusks in the sediments will be exposed to chromium between 2006 and 2007, which will eventually lead to infertility in 5% of chromium exposed mollusks.”
However, the essential question (“May Honeywell’s chromium present an imminent and substantial endangerment to the environment?”) is a mixed question of fact and law. The reason this is so is that this question can only be answered by both determining the facts of the ease and determining what the relevant law means. That is, not only do we need to know the answer to the following question of faet-“What are the dangers caused by Honeywell’s chromium?”-but also, once we get the answer-“Honeywell’s chromium caused a 10% chance that between 10,000 and 20,000 mollusks in the sediments will be exposed to chromium between 2006 and 2007, which will eventually lead to infertility in 5% of chromium exposed mollusks.”we must determine what the relevant law means and whether the fact(s) applied to the law signal a violation. That is, we must ask: What did Congress mean by “may,” “imminent,” “substantial,” “endangerment,” “health,” and “environment” in RCRA? More specifically, we must at least ask: (1) Is an exposure to a toxin that will occur between one and two years from now “imminent” in the sense that Congress intended “imminent” to mean in RCRA?; and (2) .Is a 10% chance that between 10,000 and 20,000 mollusks will incur a 5% increased risk of infertility a “substantial” endangerment in the sense that Congress intended “substantial” to mean in RCRA? Thus, at first blush it appears that, while we should apply a clearly erroneous standard to the facts (the dangers caused by Honeywell’s chromium) found by the District Court, we should apply plenary review to the Court’s “application of those facts to legal precepts.” Cellnet, 327 F.3d at 244.
All this theory aside, practical reasons dictate that a mixed standard should not be used in a case such as this. Fact questions predominate the determination of imminent and substantial endangerment. In this case, the District Court had to evaluate the testimony of numerous experts and determine the implications of scientific studies. The First Circuit has adopted a sliding scale approach to such fact-dominated mixed questions, explaining that “[t]he standard of review applicable to mixed questions usually depends upon where they fall along the degree-of-deference continuum: the more fact-dominated the question, the more likely it is that the trier’s resolution of it will be accepted unless shown to be clearly erroneous.” In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir.1993). The Fifth, Sixth, Eighth, and Ninth and Tenth Circuits have also applied clearly erroneous review to mixed questions when fact questions predominated. See Love Box Co. v. Comm’r, 842 F.2d 1213, 1215 (10th Cir.1988); Supre *271 v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986); Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355-56 (9th Cir.1985); Connally v. Transcon Lines, 583 F.2d 199, 202 (5th Cir.1978); Nash v. Farmers New World Life Ins. Co., 570 F.2d 558, 561 n. 7 (6th Cir.1978); Backar v. W. States Prod. Co., 547 F.2d 876, 884 (5th Cir.1977); Rogers v. Bates, 431 F.2d 16, 18 (8th Cir.1970). Two commentators have concluded that “[m]ore and more courts ... attempt to sort out whether a particular mixed law-fact question primarily involves a factual inquiry (in which case [Fed.R.Civ.P.] Rule 52 deference is appropriate even for mixed questions) or primarily the consideration of legal principles (so that de novo review follows).” Steven Alan Childress & Martha S. Davis, Federal Standards of Review 2-100 (1999).
Most important, the Supreme Court has stated:
[W]e have held that deferential review of mixed questions of law and fact is warranted when it appeal's that the district court is “better positioned” than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of the legal doctrine. Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990) (“[T]he district court is better situated than the court of appeals to marshal the pertinent facts and apply [a] fact-dependent legal standard” such as Rule 11); [Pierce v. Underwood, 487 U.S. 552, 562, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ] ([T]he question whether the Government’s litigating position has been ‘substantially justified’ is ... a multifarious and novel question, little susceptible, for the time being at least, of useful generalization.”).
Salve Regina Coll. v. Russell, 499 U.S. 225, 233, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
In RCRA cases such as this one, the District Court is better positioned than are we to marshal the pertinent facts and apply a fact-dependent legal standard. The determination of whether waste may present an imminent and substantial endangerment is heavily fact intensive, typically relying on expert testimony and expert studies interpreted at trial by experts. Also, the determination of whether waste may present an imminent and substantial endangerment is a multifarious question, not susceptible to useful generalization. Even though our question is a mixed one, Supreme Court precedent and treatise argument [8] support reviewing it deferentially under a clearly erroneous standard. Thus I arrive at essentially the same deferential standard as my colleagues by a different, and certainly more Proustian, path of analysis.

. In Parker, the Eleventh Circuit reviewed imminent and substantial endangerment for sufficient evidence. 386 F.3d at 1015. The Court did not explain why it used a sufficient evidence standard. In Cox, the Fifth Circuit reviewed imminent and substantial endangerment under a clearly erroneous standard. 256 F.3d at 300-01. It did not explain why. In Dague, the Second Circuit did not explicitly state which standard of review it applied and offered no reasoning for why it applied that standard. The Court referred to the determination of imminent and substantial endangerment as a “finding.” 935 F.2d at 1356. As “finding” implies a question of fact, I agree with the majority that the Dague Court thought imminent and substantial endangerment was a question of fact. Parker, Cox, and arguably Dague thus use a deferential standard of review for imminent and substantial endangerment. However, none of these decisions gives any reasoning for why imminent and substantial endangerment should be reviewed deferentially.

. As Childress and Davis write:
If the application [of law to facts] refines the [legal] test or suggests something broadly applicable in future cases, the appellate court legitimately performs the function de novo. However, the actual application of law to facts to see whether a particular set of facts rises up sufficiently to meet the test, except to the extent it defines the test for future courts, is just the fact-finding process, not law-making; it should be reviewed for clear error.
Childress & Davis, supra, at 2-102.